OPINION of the court
Arthur D. Spatt, J.
Acquitted of the charge of murder in the second degree by reason of “mental disease or defect”, petitioner Michael Machuca was, by order of the Supreme Court, Bronx County (Tonetti, J.), pursuant to the provisions of CPL 330.20, committed to the custody of the Mid-Hudson Psychiatric Center on January 28, 1980.
Thereafter, on or about July 7, 1981, petitioner was transferred to the custody of the Central Islip Psychiatric Center (Central Islip), a “non-secure” facility.
By an instrument entitled “Application For Release” dated August 6, 1981, subscribed by petitioner’s treating psychiatrist, he sought, inter alla, an “Evaluation for release according to * * * 330.20 of the Criminal Procedure Law”. As part of this application, petitioner’s diagnosis was stated to be “substance use disorder (mixed) in remission”.
As a result of this application, petitioner was seen by the Central Islip Forensic Committee. By a report dated August 19, 1981, the forensic committee recommended, inter alla, that petitioner be “released”.
*1045 As a result of the forensic committee’s recommendation, the State Commissioner of Mental Health, by H. E. Smith, Director, Bureau of Forensic Services, commenced the instant proceeding seeking a “release order” on behalf of petitioner pursuant to CPL 330.20 (subd 12).
In support of the application for a release order, the petitioner alleges, in pertinent part, as follows: “(6) This application is made upon the ground that the undersigned is of the view that the above-named defendant does not have a dangerous mental disorder as that term is defined in paragraph (c) of subdivision one of section 330.20 of the Criminal Procedure Law in that the defendant does not currently suffer from an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the defendant requires care, treatment and rehabilitation, and that because of such condition the defendant currently constitutes a physical danger to himself or others, and that the above-named defendant is not mentally ill as that term is used in paragraph (d) of subdivision one of section 330.20 of the Criminal Procedure Law”.
Thereafter, on February 26, 1982, this proceeding came before me for hearing as required by CPL 330.20. The hearing was held at the courthouse situate on the grounds of Pilgrim State Hospital.
It is well settled that “[a]t such hearing, the district attorney must establish to the satisfaction of the court that the defendant has a dangerous mental disorder or is mentally ill.” (See CPL 330.20.) During the course of the hearing, and upon the testimony of psychiatric witnesses produced on behalf of the petitioner and on behalf of the District Attorney of Bronx County, this court determined to direct the appointment of two psychiatrists to examine petitioner and to submit reports as to their findings.
Authority for the appointment of such psychiatrists is to be found in CPL 330.20 (subd 15) which provides, in pertinent part, as follows: “15. Designation of psychiatric examiners. If, "at any hearing conducted under this section to determine the defendant’s present mental condition, the *1046 court is not satisfied with the findings of the psychiatric examiners, the court may direct the commissioner to designate one or more additional psychiatric examiners to conduct an examination of the defendant and submit a report of their findings. In addition, the court may on its own motion, or upon request of a party, may designate one or more psychiatric examiners to examine the defendant and submit a report of their findings. The district attorney may apply to the court for an order directing that the defendant submit to an examination by a psychiatric examiner designated by the district attorney, and such psychiatric examiner may testify at the hearing.” (Emphasis supplied.)
This matter has been recessed pending the issuance of formal orders specifically designating the two court-op-pointed psychiatrists, and pending the examination to be conducted of petitioner by said psychiatrists.
THE ISSUE PRESENTED
The problem now confronting the court may be described very simply: where is the money to come from to compensate the skilled experts required?
The acts of petitioner underlying his commitment to the jurisdiction of the State Commissioner of Mental Health involved violence of the most heinous nature. Cognizant of this fact, and noting that the psychiatrists who have previously testified have all indicated that petitioner’s “mental disease or defect” (allegedly in remission) had been related to his ingestion of illicit drugs, the court undertook to locate and appoint psychiatrists specifically familiar with the “drug-induced psychosis”. Priór to making a determination in the matter, the court feels legally and morally bound to obtain the most experienced and knowledgeable expert advice available in this particular field.
To properly discharge its duty, the court must not only ascertain petitioner’s present condition, it must also determine the likelihood of a recurrence and what “conditions” should be imposed upon petitioner’s release, should such relief be granted.
In the year 1982, expert medical testimony of this nature is very costly. For example, one psychiatrist, an outstand *1047 ing expert in this field, whom the court wishes to appoint, provided the following table of fees:
“Examination of patient in the doctor’s office,
per 45 minutes ..............................$ 95.00
“Psychiatric report per 1 hour ................$125.00
“Court attendance per 1 hour ................$175.00.”
Another psychiatrist who has already accepted this assignment and has been appointed by formal order has accepted such assignment based upon this court’s assurance that efforts would be made to obtain for him a “fair” fee which would obviously be substantially in excess of the statutory minimum.
It is this “statutory” fee which prompts this interim decision.
Funding for a psychiatrist appointed pursuant to the terms of CPL 330.20 (subd 15) appears to be authorized pursuant to subdivision 3 of section 35 of the Judiciary Law which provides, in pertinent part, as follows: “A psychiatrist, psychologist or physician so appointed shall, upon completion of his services, receive reimbursement for expenses reasonably incurred and reasonable compensation for such services, to be fixed by the court. Such compensation shall not exceed two hundred dollars if one psychiatrist, psychologist or physician is appointed, or an aggregate sum of three hundred dollars if two psychiatrists, psychologists or physicians are appointed, except that in extraordinary circumstances the court may provide for compensation in excess of the foregoing limits.” (Emphasis supplied.)
Thus, unless a court, contemplating the appointment of a psychiatrist, makes a finding that “extraordinary circumstances” exist, the total sum available for the payment of the two court-appointed psychiatrists would be $150 for each doctor. Such a fee is patently inadequate given the complexity of this type of case and the current realistic reasonable value of such an expert’s time.
Parenthetically, the court wishes to note that even in the “ordinary case”, the limited funds now available by statute with which to fund court-appointed psychiatrists and other medical witnesses is inadequate. This became clearly evi *1048 dent during the period that this court presided at hearings at Pilgrim State Hospital with regard to applications to retain or release civilly committed patients and applications for authorizations to perform surgical procedures. The number of available medical witnesses who have agreed to conduct the examinations and testify for the statutory fee of $200 is limited. Indeed, the “pool” of psychiatric witnesses apparently consists of only three dedicated individuals. The physicians who do accept these assignments do an excellent job but, in this court’s view, are underpaid and, given a fair and reasonable fee, would be able to devote additional time to such extremely important assignments.
It is even more difficult to obtain the testimony of other physicians to testify with respect to the need for proposed surgery for the patients who do not have the mental capacity to consent. In fact, the court was advised that “outside” surgeons who have recommended surgery to the hospital authorities absolutely refuse to testify at these “surgical consent” hearings.
Certainly, the court should have the same “arsenal of tools” and financial resources when evaluating such matters as is available to the District Attorney and private counsel in a criminal trial.
CONCLUSIONS
In view of the nature of the violent acts which resulted in petitioner’s commitment; and given the complex medical questions presented with respect to his present condition (the nature of the ailment, if any; its likelihood of recurrence), the court finds that, pursuant to section 35 of the Judiciary Law “extraordinary circumstances” exist warranting fees to the court-appointed psychiatrists in excess of the statutory minimum. Further, the court finds that the fee schedule cited above is reasonable and that such fee should be approved in this case.
Therefore, this court hereby requests the appropriate authorities in our court structure to forthwith approve the fee schedule as set forth herein.
In addition, this court respectfully requests that the appropriate office in our court structure forward a copy of *1049 this opinion to the appropriate committees in the State Senate and Assembly, with a request for an immediate amendment to subdivision 3 of section 35 of the Judiciary Law, apparently last amended in 1975, to either substantially increase the expert’s fee or, preferably, to permit such fee to be fixed by the court on a case-by-case basis.